UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SLSJ, LLC,<br><br>            Plaintiff,<br>   v.<br><br>ALBERT KLEBAN and THE LE RIVAGE<br>LIMITED PARTNERSHIP,<br><br>            Defendants. | Civil Action No.<br>No. 3:14-cv-390 (CSH)<br><br>AUGUST 17, 2016 |

**DISCOVERY ORDER RE: FINAL PENDING ISSUE IN
PLAINTIFF'S MOTION TO COMPEL [DOC. 44]**

**HAIGHT, Senior District Judge:**

### I. INTRODUCTION

At the core of this case is a dispute relating to Sun Realty Associates ("Sun Realty"), a family-owned limited liability company. Plaintiff SLSJ, LLC ("Plaintiff" or "SLSJ") commenced this action against individual Albert Kleban ("Kleban") and Le Rivage Limited Partnership ("Le Rivage") (herein collectively "Defendants"), Plaintiffs' former partners in Sun Realty, alleging, *inter alia*, breach of fiduciary duty and fraud with respect to the sale of Plaintiff's one-third interest in Sun Realty, including its sole asset known as the Black Rock Shopping Center ("Black Rock"), a commercial property in Fairfield, Connecticut.[1] In particular, Plaintiff seeks money damages relating to the Membership Interest Purchase Agreement ("Purchase Agreement") it executed on June

---

[1] Lois Jeruss is Defendant Kleban's cousin, the daughter of Leon Kleban, and the managing member of Plaintiff SLSJ.  Doc. 1, ¶ 14.  She currently owns 70% of Plaintiff, and the remainder is owned by her two daughters. *Id.*, ¶ 18.  As discussed *supra*, Plaintiff previously owned a 33.3333% membership interest in Sun Realty.  *Id.*, ¶ 13.

1

27, 2013, in which Plaintiff agreed to sell its 33.3333 percent membership interest in Sun Realty and outstanding promissory notes to Kleban and his successor-in-interest, Le Rivage, for the sum of $2,020,540.41.[2]  Plaintiff thereafter executed an "Assignment" of its interest in Sun Realty to Le Rivage on July 29, 2013.  Doc. 1, at ¶ 47.

Plaintiff alleges that in selling and assigning its interest in Sun Realty, it relied upon Kleban's fraudulent statements and misrepresentations regarding the value of Black Rock.[3]  Within six months of that sale, in December 2013, Kleban Properties and Regency Centers Corporation ("Regency Centers") – "a real estate investment trust owning more than 300 retail properties [in] the United States with a total capitalization of $6.7 billion" – "publicly announced that they were entering into an agreement under which Regency Centers would acquire an 80% interest in a portfolio of three properties controlled by Kleban Properties, including Black Rock Shopping Center." *Id.*, at ¶ 44. On or about March 12, 2014, Kleban Properties and Regency Centers closed that transaction for a purchase price of $150 million.[4]  *Id.*, at ¶ 56.

## II. PENDING MOTION TO COMPEL

On June 27, 2016, the Court entered an Order [Doc. 62]  to resolve the last remaining

---

[2]  Plaintiff represents that "Defendant  Le Rivage  is  Kleban's limited  partnership and assignee of Kleban's rights under the Purchase Agreement."  Doc. 29, at 6.

[3]  In the words of Defendants' counsel, Plaintiff  "claims that it was essentially tricked by Mr. Kleban, through misleading statements and omissions, into selling its membership interest" in Sun Realty.  Doc. 20, at 1.

[4]  According to Defendants, "the Regency Centers transaction involved a portfolio of eleven separate entities, one of which was Sun Realty Associates, which formed a joint venture with Regency Centers.  Regency Centers owns 80% of the joint venture and the Portfolio owns 20%." Doc. 63, at 4.  *See also* Doc. 1, ¶ 44.

discovery dispute contained in Plaintiff's pending Motion to Compel [Doc. 44]. That dispute arises under Plaintiff's "Document Request No. 6," which seeks the following:

> All documents and ESI [electronically stored information] created or modified on or after January 1, 2010 concerning communications with one or more members of Sun Realty concerning Sun Realty or Black Rock Shopping Center, and all information provided to, or exchanged with, any member of Sun Realty, including but not limited to:
>
> c.   Communications and information concerning HFF; [5]
>
> d.   Communications and information concerning Regency Centers Corporation or Regency Centers, LP (hereinafter referred to collectively as "Regency Centers") or any transaction with Regency Centers;
>
> e.   Communications and information concerning distribution payments or any payment or consideration provided to any member; and
>
> f.   Communications and information concerning any financing or potential financing of Sun Realty or Black Rock Shopping Center, or any investment in or potential investment in Sun Realty or Black Rock Shopping Center by a party other than a member.

*See* Doc. 64 (Plaintiff's Reply to Defendants' Notice [Doc. 63]), at 2-3. According to Plaintiff, at the parties' discovery conference on May 14, 2015, Defendants confirmed that they would "produce the requested documents [in Request No. 6] subject to the parties' agreement that day to limit the production to materials created or modified on or after **January 1, 2012**," as opposed to January 1, 2010. Doc. 45, at 7 (emphasis added). *See also* Doc. 59 (Plaintiff's Third Status Report), at 2; Doc. 64 (Plaintiff's Reply), at 2.

---

[5]   As described in Plaintiff's Complaint, HFF, Inc. is a "national real estate brokerage firm, [which] had represented Kleban Properties" in the negotiations for the sale of the portfolio of three properties (including Black Rock Shopping Center) to Regency Centers Corporation. Doc. 1, ¶ 44.

In its Third Status Report to the Court on its motion to compel, Plaintiff represented that Defendants had failed to fully respond to Request No. 6 by producing only communications received on or before July 29, 2013, rather than providing *all* materials created or modified on or after January 1, 2012. *See* Doc. 59, at 2. According to Plaintiff, "[t]he terms of the transaction between Sun Realty Associates and Regency Centers Corporation, which closed in March 2014, and the financial implications for members of Sun Realty Associates who continued to hold their interests until then, are relevant to plaintiff's damages." *Id.* ("The subject communications likely provide evidence of the value plaintiff could have realized for its membership interests had it not sold them to defendant Kleban in July 2013, just as he was secretly preparing to sell Sun Realty's single asset, Black Rock Shopping Center, to a third party."). Plaintiff thus asserted, and the Court agreed, that the documents sought are relevant to Plaintiff's alleged damages. In particular, these documents may demonstrate "what treatment and options were afforded members of Sun Realty Associates who continued to hold membership interests as a result of the transaction Albert Kleban entered into with Regency Centers Corporation."[6] *Id.*

At the time Plaintiff filed its Third Status Report, Plaintiff's counsel had emailed Defendants' counsel to follow up regarding production of the requested documents, but Defendants failed to produce them. The Court thus ordered that "on or before July 8, 2016, Defendants either provide the responsive documents to Plaintiff or file a written objection with the Court, setting forth their specific grounds for refusing to produce the documents responsive to Request No. 6 for the time period sought – *i.e.*, documents created or modified on or after January 1, 2012." Doc. 62.

---

[6] Pursuant to Federal Rule 401 of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401(a), (b).

Rather than producing the remaining requested documents or filing objections to their production by July 8, Defendants' counsel filed a document entitled "Notice of Substantial Compliance With Plaintiff's Document Request #6" [Doc. 63]. In that Notice, Defendants inform the Court that it is their position that they are already in "substantial compliance" with Document Request No. 6. In support, they assert that the parties have produced "hundreds of thousands of pages [of documents]. . . by virtue of the issuance of subpoenas and document production by the parties." Doc. 63, at 4-5. Moreover, Defendants state that they "have incurred tens of thousands of dollars of expense for the services of an ESI vendor to procure and assist in the review of documents from numerous Kleban-related commercial entities which were subpoenaed by Plaintiff." *Id.*, at 5.

Defendants clarify, however, that "in light of the Court's Order of June 27, 2016, [they] will continue to review post July 29, 2013 documents up to and through March 31, 2014, and will produce documents, if any, that 'show what treatment and options were afforded members of Sun Realty who continued to hold membership interests in Sun Realty following the closing of the Regency Center[s'] transaction.'" *Id.*, at 1. Defendants thus concede that additional responsive documents may exist and be detected during a review. However, rather than performing such a review and producing any responsive documents at this time, Defendants simply offer to "supplement their responses" in the future "in accordance with the obligation imposed by Rule 26(e) of the Federal Rules of Civil Procedure."[7] *Id.* Moreover, Defendants unilaterally change the end

---

[7] Pursuant to Rule 26(e), Fed. R. Civ. P., "A party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response:

(A) in a timely manner if the party learns that in some material respect the disclosure

5

date for documents sought to March 31, 2014, instead of offering to review all documents after January 1, 2012, particularly including those after July 29, 2013, as Plaintiff requested. Defendants offer no grounds for this end-date change.[8] For example, they suggest no prejudice with respect to material cost or burden in completing production.[9]

The Court is heartened by Defendants' self-described willing participation in the discovery process, as well as Defendants' recognition of their continuing obligation to supplement discovery. However, the Court's Order [Doc. 62] addressed a specific discovery request, mandating that "on or before **July 8, 2016**," Defendants either *provide the responsive documents* to Plaintiff or *file a written objection* with the Court, setting forth their specific grounds for refusing to produce the documents for the designated time period. A litany of prior discovery and/or a statement of intent to supplement discovery – with a newly limited scope at an undesignated future date – does not comply with the Court's Order.

In sum, by imposing a case deadline, the Court directed Defendants to either produce the

---

or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or

(B) as ordered by the court."

[8] The Court notes that the transaction between Kleban Properties and Regency Centers was allegedly closed on March 12, 2014. Doc. 1, at ¶ 56. However, Plaintiff wishes to determine through discovery whether there were relevant communications between Kleban and Regency Centers up until and including December 2014, Doc. 64, at 3-4. *See* n.10, *infra*.

[9] In fact, Plaintiff has asserted repeatedly, without objection by Defendants, that "defendants confirmed on May 14, 2015, that they would produce the requested documents subject to [the] agreed limitation" that they would produced responsive documents created or modified after January 1, 2012. Doc. 64, at 3 (citing Doc. 44, 45). Before the Court issued its prior Order on June 27, 2016, Plaintiff represented that Defendants had "already produced responsive documents created or modified through July 29, 2013." *Id.*

6

responsive documents or file specific objections.  Given Defendants' offer to "continue to review post July 29, 2013 documents up to and through March 31, 2014" and to supplement discovery if relevant documents are "unearthed," Defendants concede that they are not in "full compliance" with respect to discovery.   They have not exhausted their search for all relevant documents created or modified after January 1, 2012, and/or after July 29, 2013, so have not fully complied.   Instead, they offer only to produce a limited portion of the documents – from "July 29, 2013 . . . through March 31, 2014" – with no specified date for compliance.

### III.  CONCLUSION

In an attempt to resolve the parties' discovery dispute, the Court ORDERS for a final time that on or before **September 6, 2016**, Defendants produce *all* documents responsive to Plaintiff's Request No. 6 – all relevant documents created on or after **January 1, 2012** and before **January 1, 2015** – or file specific objections to the production of any and all such documents they fail to produce.[10]   This deadline is peremptory and full compliance is required.  If Defendants fail to comply with this newly set deadline, the Court will grant Plaintiff's "Motion to Compel" [Doc. 44] with respect to the final pending issue, Request No. 6, which may result in Defendants' payment of Plaintiff's "reasonable expenses incurred in making the motion, including attorney's fees."  *See* Fed.

---

[10] The Court adopts the dates for the documents sought from Plaintiff's Reply. Doc.64, at 3-4.  By agreement with Defendants on May 14, 2015, Plaintiff sought documents that were created or modified on or after January 1, 2012.  However, when Defendants failed to produce documents for the period after July 29, 2013, Plaintiff filed its motion to compel. Doc. 44.  At this time, Plaintiff limits the end date for documents created or modified to December 31, 2014, stating that if Defendants have produced all documents up to July 29, 2013, they can then "refine their prior electronic search of emails and correspondence to members of Sun Realty Associates, LLC," for the "17[-]month period" from July 29, 2013 to December 31, 2014. Doc. 64, at 3. This limitation should lessen the expense and/or burden on Defendants for this final production while encompassing a reasonable period of time during which relevant documents may have been generated.

R. Civ. P. 37(A)(5)(a).   In addition, the Court may impose sanctions against Defendants for failure "to obey . . . [a] pretrial order," pursuant to Rule 16(f), Fed. R. Civ. P.

If Defendants comply with this Order, Plaintiff must so inform the Court by filing a notice regarding said compliance and/or a motion to withdraw its pending "Motion to Compel" [Doc. 44] on or before **September 6, 2016.**

The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
       August 17, 2016

                                      */s/Charles S. Haight, Jr.*
                                      CHARLES S. HAIGHT, JR.
                                      Senior United States District Judge