# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SLSJ, LLC,<br><br>               Plaintiff,<br><br>v.<br><br><br>ALBERT J. KLEBAN and THE LE RIVAGE<br>LIMITED PARTNERSHIP,<br><br>               Defendants. | Civil Action No.<br>3:14-cv-390 (CSH)<br><br><br><br>**APRIL 13, 2021** |

## MEMORANDUM AND ORDER

**HAIGHT, Senior District Judge:**

In this diversity action arising out of Plaintiff's sale of its interest in a real estate entity to Defendants, this Court held on cross-motions for summary judgment in a Ruling reported at 2020 WL 5947141 (*"Kleban I"*) that Plaintiff's claim against Defendant Albert J. Kleban "for damages based on breach of fiduciary duty fails for lack of proximate causation."[1] *Id.* at *15.

Subsequently, in a opinion reported at 2020 WL 6806160 (*"Kleban II"*), the Court granted Plaintiff's motion for reconsideration, and scheduled a hearing to consider whether the Court should adhere to its judgment as declared in *Kleban I*.

Those two opinions, familiarity with which is assumed, fully state the Court's reasons for its

---

[1] *See SLSJ, LLC v. Kleban*, No. 3:14-CV-390 (CSH), 2020 WL 5947141 (D. Conn. Oct. 6, 2020), *reconsideration granted*, No. 3:14-CV-390 (CSH), 2020 WL 6806160 (D. Conn. Nov. 19, 2020).

initial ruling and subsequent granting of reconsideration, which are not recounted here.

Counsel for the parties presented oral arguments at the hearing held in response to Plaintiff's motion for reconsideration. The Court has considered those submissions, the prior briefs of counsel, the Court's prior opinions, and the history of this interesting and significant case. For the reasons that follow, the Court adheres to its prior Ruling in *Kleban I* on the cross-motions for summary judgment.

# I

The theory of Plaintiff SLSJ's case against Defendant Albert Kleban is that Kleban's breach of a fiduciary duty he owed to SLSJ and its primary owner, Lois Jeruss, proximately caused damages to SLSJ and Jeruss. The case arises out of SLSJ's sale of its interest in Sun Realty Associates, LLC ("Sun Realty") to Kleban. In *Kleban I,* I held that at the time of that transaction, "a fiduciary relationship existed between Albert Kleban as fiduciary, and SLSJ and Lois Jeruss as beneficiaries." 2020 WL 5947141l, at *12. Moreover, *Kleban I* "assume[d] without deciding that Albert Kleban's role as a fiduciary obligated him to disclose to Sun Realty interest-owning members on a day-to-day basis Kleban's efforts to sell the property to third parties." *Id*. at *15. To sustain a viable claim under Connecticut law for breach of fiduciary duty, Plaintiff must show *inter alia* that Plaintiff suffered damages which "were proximately caused by the fiduciary's breach of his or her fiduciary duty." *Inteliclear, LLC v. Victor*, No. 3:16CV1403 (JBA), 2016 WL 5746349, at *7 n.19 (D. Conn. Oct. 3, 2016) (quoting *AW Power Holdings, LLC v. FirstLight Waterbury Holdings, LLC,* No. CV146047836S, 2015 WL 897785, at *4 (Conn. Super. Ct. Feb. 17, 2015)).

*Kleban I* dismissed Plaintiff's claim because the chronology of the case precluded Plaintiff from showing that a breach of the fiduciary duty Albert Kleban owed to SLSJ proximately caused damage to SLSJ. SLSJ agreed to sell its interest in Sun Realty to Kleban in a purchase agreement

dated June 1, 2013. The closing date of that transaction was July 31, 2013. From that latter date forward, there was no relationship, fiduciary or otherwise, between Kleban and SLSJ with respect to Sun Realty, or anything else. Kleban eventually sold Sun Realty to Regency Centers Corporation ("Regency"). "The Klebans' first contact with Regency occurred through its broker in September 2013. The sale agreement to Regency was executed on October 17, 2013." *Kleban I*, 2020 WL 5947141, at *13. *Kleban I* reasoned that as of July 31, 2013, and thereafter, SLSJ was "not in a position to characterize Albert Kleban's failure to disclose the Regency transaction as a proximate cause of SLSJ's financially disadvantageous transaction with Kleban, since Regency's financially rewarding appearance on the scene lay well in the future." *Id*. at *15. In *Kleban I*, I declined "to trace Albert Kleban's fiduciary duty liability beyond the termination of SLSJ's membership interest in Sun Realty, that being the interest upon which SLSJ's fiduciary relationship with Albert Kleban depended." *Id*.

## II

During the course of the Ruling in *Kleban I*, I said: "The damage SLSJ claims to have suffered is derived solely from a comparison of the value ascribed to Sun Realty when Albert Kleban bought SLSJ's one-third interest in Sun Realty in June 2013 with the allocated value of Sun Realty when the Kleban Entities (including Albert) sold an 80 percent interest in Black Rock and other Kleban-owned properties to Regency in October 2013." 2020 WL 5947141, at *14. As *Kleban II* recounts, Plaintiff sought reconsideration of *Kleban I* by criticizing this statement by the Court as an "incorrect premise," since SLSJ's damage claim, Plaintiff asserted in aid of reconsideration, "is that it suffered injury not when the Regency transaction closed, but, rather, at the moment SLSJ's sale transaction with Kleban closed, on July 29, 2013, because SLSJ received inadequate consideration...." *Kleban II*, 2020 WL

6806160, at *2 (quoting brief for Plaintiff in support of reconsideration).

While I pointed out in *Kleban II* that the Court's description of Plaintiff's claim in *Kleban I* mirrored Plaintiff's own description during pre-trial discovery, it seemed fair to allow Plaintiff reconsideration of the point, and the hearing was convened for that purpose.

### III

Mr. Lieberman, who argued the case for the Plaintiff at the reconsideration hearing, said at the outset that

> plaintiff's claim [was] and always has been that it suffered damages the moment the transaction was consummated. And it's very simple. It gave away an asset worth X dollars, and it was paid X minus $2.5 million for it. So it was damaged by exchanging an asset worth far more value than the purchase price.

Transcript of Oral Argument (held Dec. 21, 2020) ("Tr.") at 6. The "transaction" counsel referred to was the sale by SLSJ of its interest in Sun Realty to Albert Kleban, consummated on July 31, 2013. Counsel continued in his argument:

> [T]he damage occurred because SLSJ would not have entered into this transaction had it known the facts that were not disclosed to it. It either would have held on to its assets or perhaps it would have received – demanded and received a higher price in that transaction.
> . . .
> . . . So the damages have always been we were paid too little on the date the transaction closed, the date of consummation. We received too little consideration for an asset that was worth more than Kleban told us it was worth.

*Id.* at 6, 10.

According to Mr. Lieberman, Plaintiff "look[s] to the Regency transaction because it's a useful measure of market value." *Id.* at 10. The "Regency transaction," the careful reader will recall, is the sale on October 17, 2013, by the Klebans of a majority interest in Sun Realty to Regency Centers

Corporation.  As of July 31, 2013, when Plaintiff SLSJ sold its minority interest in Sun Realty to Albert Kleban, there had been no contact between Kleban and Regency.  "The Klebans' first contact with Regency occurred through its broker in September 2013." *Kleban I*, 2020 WL 5947141, at \*13.

## IV

Having considered the case anew, I adhere to the conclusion reached in *Kleban I* that as a matter of law, SLSJ cannot show that a breach of the fiduciary duty Albert Kleban owed SLSJ  was the proximate cause of economic deprivation SLSJ suffered by not participating in the Kleban's sale of Sun Realty interests to Regency.  SLSJ agreed to sell its Sun Realty minority interest to Albert Kleban on June 1, 2013.   That transaction closed on July 31.   Regency emerged as a potential purchaser of Sun Realty from the Klebans in September, two months after the SLSJ/Kleban transaction closed.  Regency did not agree with the Klebans to purchase Sun Realty  until October 17.

SLSJ's theory in this action has to be (and  is) that if Kleban had made more complete disclosure about efforts to sell Sun Realty to third parties, SLSJ might have held onto the asset and awaited possible favorable developments (such as the emergence, through a broker's efforts, of Regency).[2] Plaintiff contends that the fiduciary duty Albert Kleban owed SLSJ in connection with Sun Realty survived SLSJ's sale of its Sun Realty interest to Kleban, in the form of a deferred causation unlimited as to time. On Plaintiff's theory, the liability to SLSJ asserted in this case would be imposed if Regency had purchased Sun Realty from the Klebans three years after SLSJ sold its Sun Realty

---

[2]   It is appropriate to reiterate at this juncture that SLSJ does not accuse Albert Kleban of falsely stating, at the time SLSJ owned a minority interest in Sun Realty, that a sale of Sun Realty to a third party was neither intended nor contemplated.  Kleban advised attendees at the April 2013 Family Meeting of a sale of such properties to third-party investors as a "possible option of relieving economic pressure." *Kleban I,* 2020 WL 5947141, at \*6.

interest to Kleban, rather than three months later, in October 2013.

I cannot accept Plaintiff's theory of causation because it conflates *proximate* cause with causation *in fact*. In *Kleban I,* I cited and quoted Justice Ginsburg's trenchant observations in *CSX Transportation, Inc. v. McBride*, 564 U.S. 685 (2011); and these words bear repeating: "proximate cause" is "shorthand for a concept," born of the common law's recognition that "[i]njuries have countless causes, and not all should give rise to legal liability;" "[b]ecause of convenience, of public policy, of a rough sense of justice, the law arbitrarily declines to trace a series of events beyond a certain point." 2020 WL 5947141, at *15 (quoting *CSX Transp.*, 564 U.S. at 692). If this Court's declination of Albert Kleban's conduct as a proximate cause of damages to SLSJ manifested by Kleban's subsequent sale of Sun Realty to Regency may be characterized as "arbitrary," the Court acts arbitrarily in a manner required by the common law, and sanctioned by the high authority of Justice Ginsburg's reflections.

I do not reach any other issue presented by the Court's Ruling in *Kleban I* or the Plaintiff's present motion for reconsideration [Doc. 133].

## V

Plaintiff's failure to satisfy the proximate cause element of its action for breach of fiduciary duty entitles the Defendants to summary judgment in their favor, dismissing the Plaintiff's Complaint in its entirety. Accordingly, the Court makes the following Order:

1. Plaintiff's Motion for Reconsideration [Doc. 133] of the Court's prior Ruling [Doc. 132] on the parties' cross-motions for summary judgment was GRANTED in the Memorandum and Order dated November 19, 2020.

2. Following a hearing on Plaintiff's Motion for Reconsideration, that motion is DENIED ON

6

THE MERITS, and the Court ADHERES TO ITS PRIOR RULING [Doc. 132], that Plaintiff cannot satisfy the element of proximate cause.

3.  It follows that Defendants' Motion for Summary Judgment [Doc. 87], seeking dismissal of all of Plaintiff's claims, is GRANTED.

4.  The Clerk is directed to enter summary judgment in favor of Defendants and close the file.

It is SO ORDERED.

Dated:   New Haven, Connecticut
         April 13, 2021

                                        /s/Charles S. Haight, Jr.
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge